UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

Eastern District of Kentucky
FILED
FEB 1 2 2020
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

SEAN LAMONT DUDLEY, )
)
Plaintiff, ) Civil No. 0:19-039-HRW
)
v. )
)
J.C. STREEVAL, ET AL., ) **MEMORANDUM OPINION**
) **AND ORDER**
Defendants. )

\*\*\* \*\*\* \*\*\* \*\*\*

Sean Lamont Dudley is an inmate at the Federal Correctional Institution (FCI) in Ashland, Kentucky. Proceeding without a lawyer, Dudley filed a civil rights complaint with this Court alleging that several prison officials displayed a deliberate indifference to his serious medical needs and were also responsible for injuries he sustained as a result of his assignment to a top bunk. [D. E. Nos. 12, 11, and 14]. Dudley claimed that each of the defendants violated his Eighth Amendment right not to have cruel and unusual punishment inflicted upon him, and he stated that he was seeking money damages. [D. E. No. 12 at 4, 8].

The defendants have now filed a motion to dismiss Dudley's complaint or, in the alternative, a motion for summary judgment [D. E. No. 25], Dudley has filed his response [D. E. No. 33], and the defendants have filed their reply [D. E. No. 38]. Thus, this matter is ripe for a decision from this Court. For the reasons set forth below, the Court will grant the defendants' dispositive motion.

1

I.

As an initial matter, Dudley's factual allegations are rather difficult to follow. That is because his completed, Court-approved complaint form contains overlapping allegations that are typed in very small, single-spaced font using all capital letters. [*See* D. E. No. 12 at 2-3]. Dudley also added multiple documents to his complaint [*see* D. E. Nos. 11, 14], and each of his submissions contain superfluous details. Thus, Dudley's allegations are hard to track. That said, Dudley is afforded latitude as a *pro se* litigant, and, as a result, the Court has tried to identify and accurately characterize those factual allegations that relate to the legal claims he appears to assert.

Dudley indicates that he has had a long history of back problems and was diagnosed with scoliosis several years ago. [*See* D. E. No. 12 at 2-3; No. 12-1 at 5]. Dudley alleges that, due to his condition, he has received numerous accommodations over the years, including a back brace, soft shoes, heel cups, extra pillows, special mattresses, and a "lower bunk profile." [*See* D. E. No. 12 at 2-3; No. 11 at 3-4].

That said, Dudley suggests that, since 2016, officials at the FCI in Ashland have provided him with legally inadequate medical care. [*See* D. E. No. 12 at 2-3]. Indeed, Dudley says that he has "suffered in pain daily for now more than three years because of the treatment being delayed and the deliberate indifference against me." [*Id.* at 3].

Dudley begins by alleging that, in July of 2016, after the Bureau of Prisons transferred him to the FCI in Ashland, Dr. Kenneth Gomez improperly removed him "from the orthopedic and rheumatologic chronic care clinic" and "stripped [him] of the back brace and lower bunk profile [previously] granted to [him]." [*Id.* at 2]. Dudley alleges that Dr. Gomez made these decisions without personally examining him, in violation of prison policies. [*See id.*]. Dudley suggests that these actions amounted to a deliberate indifference to his serious medical needs. [*See id.* at 2-3].

Dudley also alleges that Physician Assistant (PA) Terri Boyd, Dr. Francisco Rios, and Health Services Administrator (HSA) Brian Baier provided him with legally inadequate medical care. [*See id.*]. Specifically, Dudley suggests these defendants agreed that he had no need for the treatments and accommodations at issue, such as the lower bunk assignment, and informed prison officials accordingly. [*See id.*; *see also* D. E. No. 11 at 3]. Dudley claims that these decisions were erroneous and, as a result, he suffered in pain and was placed at risk because he was forced to use an upper bunk. [*See* D. E. No. 12 at 3].

In addition to these allegations related to his medical care, Dudley separately alleges that he could not easily access the upper bunk in the different rooms to which he was assigned because lockers blocked his ability to "properly" use the ladders in the rooms. [*See id.*]. Dudley further alleges that he was forced to use a stool, which specifically indicated that it was not for standing, as well as the lockers in order to

3

access the upper bunks. [*See id.*]. Dudley blames Warden J.C. Streeval, Environmental and Safety Compliance Administrator Michael Carley, and Unit Manager Michael Lester for this condition, repeatedly alleging that these defendants "failed to perceive[ ] a risk of injury" to him "by refusing to recognize that the ladders . . . could not be properly used because the lockers impeded the ability to properly use them." [*Id.*]. Ultimately, Dudley alleges that these defendants' refusal to fix this situation resulted in him being injured on January 12, 2017, "when he [fell off] the stool [while] getting off the upper bunk." [D. E. No. 11 at 5; *see also* D. E. No. 12 at 3].

Dudley claims that each of the named defendants violated his rights under the Eighth Amendment to the United States Constitution. [*See* D. E. No. 12 at 4]. As best as the Court can tell, Dudley is claiming that Dr. Gomez, PA Boyd, Dr. Rios, and HSA Baier were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. [*See id.* at 4]. Dudley also appears to be claiming that Warden Streeval, Administrator Carley, and Unit Manger Lester ran afoul of his Eighth Amendment rights because they "failed to perceive[ ] a risk of injury" to him with respect to the placement of the ladders and, thus, were responsible for a dangerous condition of confinement. [*See id.* at 2-4].[1] Dudley brings his claims

---

[1] Dudley has not clearly asserted any other legal claims in his complaint. For example, Dudley does not appear to put forth a Federal Tort Claims Act (FTCA) claim against the United States; after all, Dudley does not list the United States as a defendant, and he has not cited the FTCA.

4

pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and he seeks $2,000,000 in damages. [*See id.* at 8].

The defendants recently filed a motion to dismiss Dudley's complaint or, in the alternative, a motion for summary judgment. [D. E. No. 25]. The defendants put forth numerous arguments in support of their motion, and they attach extensive documentary evidence in support. [*See* D. E. Nos. 25-1 through 25-8]. Dudley then filed a response in opposition to the defendants' motion [D. E. No. 33], and the defendants filed a reply brief [D. E. No. 38]. Thus, this matter is ripe for a decision from this Court.

## II.

As an initial matter, the Court will treat the defendants' motion as one for summary judgment because they have attached and relied upon documents and declarations extrinsic to the pleadings. *See* Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). Ultimately, the Court will grant the defendants' motion because Dudley's Eighth Amendment claims are unavailing.

---

[*See* D. E. No. 12 at 4]. Dudley also does not appear to be asserting any state law tort claims against any of the defendants. [*See id.* (only citing the Eighth Amendment as the basis for his claims)]. Thus, as the Court indicated in its screening Order, this action is limited to Dudley's Eighth Amendment claims discussed above.

*A. Eighth Amendment Deliberate Indifference Claims
Against Dr. Gomez, PA Boyd, Dr. Rios, and HSA Baier*

Dudley's deliberate indifference claims against Dr. Gomez, PA Boyd, Dr. Rios, and HSA Baier are without merit. To be sure, under certain circumstances, a prisoner can establish an Eighth Amendment violation if he is provided legally inadequate medical care. However, a claim for denial of adequate medical care has two components: one objective and one subjective. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). To satisfy the objective component, the plaintiff must allege a sufficiently serious medical need. *Id.* To satisfy the subjective component, the plaintiff must allege facts which "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). Here, even construing all of the evidence in the light most favorable to Dudley and assuming he suffers from a sufficiently serious medical need, he has nevertheless failed to establish that any of the four named defendants "subjectively perceived a risk of harm and then disregarded it." *Comstock*, 273 F.3d at 703.

With respect to Dr. Gomez, PA Boyd, and Dr. Rios, the evidence shows that each of these defendants were extensively involved in caring for Dudley. Indeed, taken together, these defendants reviewed Dudley's medical records, including his

6

intake screening and laboratory results; examined him on numerous occasions; ordered him new medications; renewed his existing medications; prescribed physical therapy; ordered him x-rays and reviewed the results; administered several injections; gave him instructions for using ice and heat; directed him to perform stretching exercises; and set up multiple orthopedic appointments. [*See* D. E. No. 25 at 12-24 (citing numerous attached exhibits, including D. E. No. 25-1 through No. 25-8)]. These were just some of the ways the defendants provided Dudley with medical care. [*See* D. E. Nos. 25-6, 25-7, and 25-8 (including hundreds of pages of medical records)]. In light of this extensive evidence, Dr. Gomez, PA Boyd, and Dr. Rios clearly did not display a deliberate indifference to Dudley's medical needs.

Dudley nevertheless insists that Dr. Gomez's initial decision, in July of 2016, to remove him "from the orthopedic and rheumatologic chronic care clinic" and "strip[ ] [him] of the back brace and lower bunk profile [previously] granted to [him]," without personally examining him, constituted cruel and unusual punishment. [D. E. No. 12 at 2]. The evidence, however, shows that when Dudley first arrived at FCI Ashland, a registered nurse conducted an initial health screening, co-signed by PA Boyd, in which Dudley denied that he used prosthetic devices/equipment, did not have any active restrictions, and did not express active symptoms or back pain. [*See* D. E. No. 25-6 at 2, 152-57; D. E. No. 25-7 at 1-2]. Dr. Gomez then reviewed Dudley's medical record and intake screening and noted that, while he was on

"Endo/Lipid" and "Ortho/Rheuma" clinics, he was not taking medications for his chronic conditions and did not have any active restrictions. Based on this information, Dr. Gomez made the clinical decision to remove Dudley from the chronic care clinics and, instead, have him follow up through the sick-call process, as needed. [*See* D. E. No. 25-6 at 3, 151]. As a result, Dudley was issued a medical duty status (MDS) with no restrictions. [*See* D. E. No. 25-6 at 3]. Dr. Gomez and his colleagues then continued to provide Dudley with medical care. [*See* D. E. No. 25-6 at 3-6]. While Dudley takes exception to Dr. Gomez's medical judgment and decisions regarding the proper course of treatment, this simply does not give rise to a constitutional claim for deliberate indifference. *See Roller v. Dankwa*, No. 17-6201, 2018 WL 5018507, *2 (6th Cir. June 21, 2018) (recognizing that courts are generally reluctant to second guess medical judgments and that disagreements over the proper course of medical treatment do not constitute cruel and unusual punishment).

Still, Dudley claims at different points in his complaint that the defendants' actions were "mislead[ing]," and involved "lies," an "intent to deceive," and "turning a blind eye" to his medical history. [*See* D. E. No. 12 at 2-3; No. 11 at 3]. Dudley, however, does not clearly point to evidence to support these assertions and, in fact, the evidence in the record demonstrates that Dr. Gomez, PA Boyd, and Dr. Rios provided him with medical care on numerous occasions. Ultimately, the United States Court of Appeals for the Sixth Circuit has made it clear that, where a prisoner

8

has received medical attention and the dispute is over the adequacy of the treatment he received, such claims are not cognizable under the Eighth Amendment. *See Graham ex rel. Estate of Graham v. Cty. Of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). Thus, Dudley's claims that Dr. Gomez, PA Boyd, and Dr. Rios acted with deliberate indifference to his medical needs are baseless.

Finally, Dudley lists HSA Baier as a defendant and suggests that he too displayed a deliberate indifference to Dudley's medical needs and lied about his need for certain accommodations. [*See* D. E. No. 12 at 2, 3]. However, the evidence in the record demonstrates that HSA Baier holds an administrative position and, thus, was not personally involved in making decisions regarding Dudley's medical care. [*See* D. E. No. 25-4 at 1-3]. Instead, HSA Baier merely followed the medical recommendations put forth by the primary care providers and did not override their plan of care and treatment decisions. [*See id.* at 2]. Since Dudley has not clearly identified any evidence to undercut these facts, his Eighth Amendment claim against HSA Baier is also without merit.

*B. Eighth Amendment Conditions-of-Confinement Claims Against Warden Streeval, Administrator Carley, and Unit Manager Lester*

Dudley's Eighth Amendment conditions-of-confinement claims against Warden Streeval, Administrator Carley, and Unit Manager Lester—related to his

alleged inability to easily access the upper bunk in the different rooms to which he was assigned—are also unavailing.

As an initial matter, it appears that Dudley has failed to state an Eighth Amendment claim against any of the three named defendants. As this Court has pointed out, "an Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness." *Belt v. Northeast Regional Health Services Administrator*, No. 0:18-cv-095-HRW, 2019 WL 1903399, at *10 (E.D. Ky. Apr. 29, 2019). In other words, an inmate must allege that a prison official: (1) was actually aware of a substantial risk that the plaintiff would suffer serious harm; and (2) knowingly disregarded that risk. *See id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Here, it does not appear that Dudley has alleged enough facts to state such a claim. To be sure, at one point in Dudley's complaint, he characterizes his alleged inability to easily access the upper bunks as "smack[ing] of deliberate indifference." [D. E. No. 12 at 3]. However, throughout his complaint, Dudley merely alleges that the defendants "failed to perceive[ ] a risk of injury" to him "by refusing to recognize that the ladders . . . could not be *properly* used because the lockers impeded the ability to *properly* use them." [D. E. No. 12 at 3 (emphasis added)]. Dudley then explains that the defendants' "refusal to fix[ ] the ladders" involved their alleged failure to move the ladders "by 7 inches" so they would be placed "in a position

10

where the lockers would not block the *proper* usage thereof." [*Id.* (emphasis added)]. Dudley then once again says the defendants "failed to perceive[ ] a risk of injury" to him, and he alleges that he was injured on January 12, 2017. [*Id.*]. Ultimately, Dudley's allegations may have stated a viable claim for negligence under the FTCA or state law. However, he does not appear to be alleging the kind of facts needed to state an Eighth Amendment claim of cruel and unusual punishment.

That said, even if Dudley has stated Eighth Amendment conditions-of-confinement claims against Warden Streeval, Administrator Carley, and Unit Manager Lester, those claims are barred by the applicable statute of limitations. Although Congress has not formally articulated a statute of limitations period for *Bivens* claims, federal courts apply the most analogous statute of limitations from the state where the events occurred. *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985). The conduct giving rise to Dudley's Eighth Amendment conditions-of-confinement claims occurred in Kentucky, at FCI Ashland. Thus, Kentucky's one-year statute of limitations for personal injury claims applies. *See* Ky. Rev. Stat. § 413.140(1)(a); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003) ("*Bivens* claims have a one-year statute of limitations under Kentucky law."). Dudley, therefore, was required to bring his *Bivens* claims within one year of becoming aware of the injury forming the basis for his claims. *Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 393-94 (6th Cir. 2015).

In this case, Dudley pursues claims related to the injuries he allegedly sustained in January of 2017. [*See* D. E. No. 12 at 3]. However, Dudley did not file this *Bivens* action until May of 2019. [*See* D. E. No. 1]. To be sure, the one-year limitations period would have been tolled while Dudley exhausted his administrative remedies under the Bureau of Prison's Inmate Grievance Program. *See Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). But, as both parties' submissions indicate, Dudley did not even begin that exhaustion process until at least June of 2018, well after the statute of limitations had already run. [*See* D. E. No. 12 at 4; D. E. No. 25 at 4-5]. In short, Dudley's Eighth Amendment conditions-of-confinement claims are simply untimely.[2]

III.

In light of the foregoing analysis, it is hereby **ORDERED** as follows:

1. The defendants' dispositive motion [D. E. No. 25] is **GRANTED**.

2. Dudley's Eighth Amendment claims against the named defendants are **DISMISSED WITH PREJUDICE**.

---

[2] It also appears that Dudley's Eighth Amendment conditions-of-confinement claims may not be cognizable under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). That is because the Supreme Court recently made it clear that federal courts should refrain from extending *Bivens* outside of the three specific contexts in which it has already been applied, absent the presence of special factors. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017). Given the *Ziglar* decision, courts have refused to extend a damages remedy under *Bivens* to new claims. *See, e.g., Hanson v. United States*, No. 18-cv-017-DLB, 2018 WL 5046067, at *1 (E.D. Ky. Oct. 17, 2018). Thus, even if Dudley had alleged enough facts to state viable Eighth Amendment conditions-of-confinement claims, and those claims were timely, it appears that those claims may still be unavailing in light of *Ziglar*, though the Court need not resolve that issue at this time.

3. In light of this Memorandum Opinion and Order, all other pending motions are **DENIED** as moot.

4. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

5. The Court will enter a corresponding Judgment.

This 12th day of February, 2020.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge